# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES R. PHILLIPS, JR., | ) | CASE NO. 3:12-cv-01609 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| EDWARD T. SHELDON, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, James R. Phillips, Jr. ("Phillips"), challenges the constitutionality of his conviction in the case of *State v. Phillips*, Lucas County Court of Common Pleas Case No. CR-0200901276.  Phillips, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on June 20, 2012.  On March 4, 2013, Warden Edward T. Sheldon ("Respondent") filed his Answer/Return of Writ.  (ECF No. 13.)  Phillips filed a Traverse on July 1, 2013.  (ECF No. 16.)  For reasons set forth in detail below, it is recommended that Phillips's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Phillips's conviction as follows:

[*P2]  Appellant, James Phillips, was high school friends with B.C.'s father.  On May 19, 2007, B.C.'s father's birthday, appellant and his girlfriend hosted a birthday party at appellant's east Toledo home.  Present at the party were appellant, his girlfriend and appellant's two daughters.  Also in attendance were B.C.'s parents, her sister, a friend and then 9 year-old B.C.

[*P3]  Toward the end of the evening, B.C. asked and received permission from her parents to spend the night in appellant's home with his two daughters. Between 11:00 p.m. and midnight, B.C.'s parents left with their other daughter and the friend.  That which occurred next is dispute[d].

[*P4]  According to B.C.'s trial testimony, by the time her parents left appellant's home, she had fallen asleep on a living room recliner while watching a movie. Appellant's children were in their bedroom, getting ready for bed.  Appellant's girlfriend had already gone to bed.  Appellant was on a living room couch.

[*P5]  "Q And then what happened?

[*P6]  "A Uh, I fell asleep on the recliner chair, and he heard me snoring, snoring.

[*P7]  "Q Okay. And then what happened?

[*P8]  "A So he moved me to the couch.

[*P9]  "Q Okay. So [appellant] moved you to the couch?

[*P10]  "A Yeah.

[*P11]  "Q Okay. And then so how were you on the couch? Were you sitting down, laying down or something else?

[*P12]  "A I was laying down.

[*P13]  "Q How was your body positioned?

[*P14]  "A I was crouched up in a ball with my hand like this (indicating.)

[*P15]  "Q So your knees were bent?

[*P16]  "A (Nods head.)

[*P17]  "***

[*P18]  "Q  Okay.  And then did something happen?

-2-

[*P19]  "A  Yes.  Uh, I felt something in my bottom and I thought it was fingers, and I think it was him.

[*P20]  "Q  And you think it was him. Now, what were you wearing, [B.]; do you remember?

[*P21]  "A  I think they were green shorts and a tank top.

[*P22]  "Q  But you had shorts on?

[*P23]  "A  Uh-huh.

[*P24]  "Q  And you said you felt what you think was fingers in your -- bottom. Do you mean your butt where you go to poop out of?

[*P25]  "A.  Yes.

[*P26]  "Q  And what did that feel like?

[*P27]  "A  It felt weird and I didn't like it.  So I woke up.  And I told him then volume was too loud.

[*P28]  "Q  Who did you tell?

[*P29]  "A  [Appellant.]

[*P30]  "Q  And where was [appellant] at when you woke up?

[*P31]  "A  On the couch next to me [b]y my bottom part."

[*P32]  According to B.C., after appellant turned down the volume, he went into his own bedroom.  At that point, B.C. went to appellant's daughters' room and went to sleep.  The next day, B.C. later testified, she, appellant and several others went fishing.  Neither then, nor later in the day when her mother picked her up did B.C. mention the incident.  Indeed, it was not until approximately one year later that B.C. told her mother what happened.

[*P33]  B.C.'s mother called police, who initiated an investigation.  At police request, B.C. submitted to a medical examination, which failed to produce corroborative evidence.  On February 6, 2009, appellant was named in a single count indictment charging him with one count of rape, a first degree felony, with a specification that the victim was under age ten.  He pled not guilty and the matter proceeded to trial before a jury.

-3-

[*P34]  At trial, B.C. testified to the events of May 19, 2007, and attributed her delay in reporting the incident to fear of appellant and, later, fear that her mother would not believe her.  A Toledo police investigator testified that delayed reporting of such events was not unusual.

[*P35]  B.C.'s mother testified, confirming some of the events of May 19.  She reported that when B.C. returned home the next day, B.C. became reclusive.  Over time, B.C.'s mother testified, B.C. became more withdrawn, prone to violence against her siblings and averse to being touched.  According to B.C.'s mother, when she discovered her daughter engaging in "sexual talk" on the internet, she sought counsel from a pediatrician, resulting in B.C.'s disclosure.  At the close of the state's case, appellant's Crim.R. 29 motion was denied.

[*P36]  In his defense, appellant presented the testimony of his girlfriend and daughter, both of whom contested B.C.'s version of events.  According to these witnesses, B.C. had not been in the living room when her parents left.  Rather, she had been playing games with appellant's daughters in their room when she complained of a headache.  According to appellant's witnesses, B.C. took an aspirin and went to sleep in the bed of one of appellant's daughters even before her parents left.  Appellant's daughter testified she slept in the same bed with B.C. that night and B.C. could not have possibly left the bed to go to the living room.  At the conclusion of the defense, the trial court again overruled appellant's renewal of the Crim.R. 29 motion and submitted the matter to the jury.

*State v. Phillips*, 2010 Ohio App. LEXIS 2122, 2010-Ohio-2577 at ¶¶2-36 (Ohio Ct. App., Jun. 4, 2010).

## II.  Procedural History

### A.  Conviction

During the January term of 2009, a Lucas County Grand Jury charged Phillips with one count of rape of a child less than thirteen years old in violation of Ohio Revised Code ("O.R.C.") §§ 2907.02(A)(1)(b) & 2907.02(B).  (ECF No. 13-1, Exh. 1.)  A jury found Phillips guilty as charged.  (ECF No. 13-1, Exh. 4.)  On May 20, 2009, the trial court sentenced him to a prison term of fifteen years to life.  (ECF No. 13-1, Exh. 5.)  Furthermore, Phillips was designated a Tier III Child Victim Offender.  *Id.*

**B.    Direct Appeal**

On June 1, 2009, Phillips, through counsel, filed a Notice of Appeal with the Court of

Appeals for the Sixth Appellate District ("state appellate court") raising the following

assignments of error:

1.   The [S]tate failed to provide sufficient evidence that the anal cavity was
     penetrated.

2.   Inconsistencies in the evidence presented by the [S]tate weaken the
     credibility of its case [and] [t]he evidence presented by the defense was
     consistent and credible.

3.   The prosecutor referred to statements and evidence not part of the record in
     her closing argument which prejudiced the jury against Appellant.

4.   Trial counsel failed to object to statements made in closing by the [S]tate
     that included facts and evidence not presented at trial.

5.   If the errors previously argued do not individually constitute reversible error,
     as a whole their cumulative effect constituted reversible error.

(ECF Nos. 6 & 7.)

On June 4, 2010, the conviction was affirmed.  (ECF No. 13-1, Exh. 9.)  No timely direct

appeal was taken to the Supreme Court of Ohio.

On November 28, 2011, Phillips, *pro se*, filed a Notice of Appeal and Motion for Leave

to file a delayed appeal with the Supreme Court of Ohio.  (ECF No. 13-1, Exhs. 20 & 21.)  On

January 18, 2012, the motion for leave to file a delayed appeal was denied.  (ECF No. 13-1, Exh.

22.)

**C.    Postconviction Motions**

On December 13, 2009, Phillips filed a motion for reduction of his sentence, arguing that

he should have received a maximum prison term of ten years pursuant to O.R.C. § 2929.14.

-5-

(ECF No. 13-1, Exh. 10.)  On the same day, Phillips sought a new trial arguing that there was no evidence the rape was accomplished by force or threat of force.  *Id.* at Exh. 11.  On February 9, 2010, Phillips filed a petition to vacate or set aside judgment of conviction or sentence raising the following arguments:

1. Deprived of my 6th Amendment Right to Effective Counsel.

   Counsel never called witnesses in my behalf.  Counsel never investigated the case, if did it was very little, nor did he prepare for trial.  He never cross-examined one witness, nor did he object to statements made by the State that included facts and evidence not presented at trial.  <u>THE ASSISTANCE OF AN ATTORNEY IS NEEDED TO PRODUCE THE EVIDENCE</u>.

2. Deprived of 6th Amendment right of Compulsery [sic] Process.

   Counsel never investigated case, never raised issues that would have changed the outcome of the case, (i.e. Hospital reports, Rape kits, Psychological reports.)  Counsel did not represent me to the best of his ability.

3. I was deprived of my 8th Amendment right; Excessive Bail and Cruel and Unusual Punishment.

   Being a first time felon I was held in the County Jail under a Bail that could not be possibly paid even if it was 10%, ($ 100,000.00)  Also while there I was treated very unfairly with the accusations started by the Accusor's [sic] Mother while in Jail and was put in the hole because of them.  Which is on the phone records, and feeling as I was being punished for something that I DID NOT DO!

4. I was deprived of my 6th and 14th Amendment right to a Fair Trial.

   At trial proceedings, the jury was hand picked.  I never got to question any of the potential jurors.  There were more women than men.  Nor did I select any of the potential jurors.  And the Prosecutor committed multiple acts of misconduct. By first putting words in accusor's [sic] mouth that she never said.  Why was it submitted?  The Prosecutor also referred to statements and evidence that was NOT part of the record which prejudiced the jury against me.  And there is more, too much more to list.  It can be found in the Brief.

5.    I was deprived of my 6th Amendment right to confront Adverse Witnesses.

I was never given the chance to confront any of the witnesses nor the Prosecutor's witnesses due to the fact that mine were never subpoenaied [sic] to Court.  These witnesses could have given statements which could have helped the case and my credibility, especially with Lacy Burlew's statement.  Which could and will prove that this was all made up.

6.    I was deprived of my 6th Amendment right, Informed of Nature of Charges.

I never received a BILL OF PARTICULARS or a DISOCVERY PACKET explaining the natutre [sic] of the crime or informed me of what type of time the charge carried.  THE STATE NEVER MADE A RESPONSE TO ME!

7.    I was deprived of my 5th  and 14th  Amendment rights of Due Process.

Upon being Arrested, I was never read my Marranda [sic] Rights nor was I informed of what I was being Arrested for, they just took me away.

8.    I was deprived of my right of Due Process.

My Conviction was not supported by the Sufficient Evidence that any crime or rape took place in question! Of the 14th Amendment, Section One and Sixteen Article One of the Ohio Constitution.

9.    I was deprived of my right of Due Process of the 5th, 6th and 14th Amendments.  Section Ten of Article One of the Ohio Constitution.

My conviction was against the manifest weight of the evidence.  There was and is many INCONSISTENCIES in the Evidence presented by the State. Weaken the credibility of it's [sic] case and more.

10.    I was DENIED my right of Due Process under; Section Ten, Article One of the 5th, 6th and 14th Amendments.

If the errors previously argued do not individually constitute reversible error, as a whole, their cumulative effect constituted reversible error.

(ECF No. 13-1, Exh. 12.)

Thereafter, Phillips filed a second motion for modification of his sentence and a second motion for a new trial.  (ECF No. 13-1, Exhs. 14 & 15.)

On June 21, 2011, the trial court denied all of the above motions and petitions.  (ECF No.

13-1, Exh. 16.)  There is no indication that Phillips appealed these rulings.

**D.  Federal Habeas Petition**[1]

On June 20, 2012, Phillips filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief:

> GROUND ONE: Appellant's conviction was not supported by the sufficiency of the evidence in violation of the Due Process Clause of the 14th Amendment to the United States Constitution and sections 1 and 16 of Article 1 and 16 of Article (I) of the Ohio Constitution:
>
> The State failed to provide sufficient evidence that the anal cavity was penetrated… (no actual, physical or medical evidence was ever shown or ever existed)
>
> GROUND TWO: Appellant's conviction was against the manifest weight of the evidence in violation of the Due Process Clause of the 5th, 6th and 14th Amendments of the United States Constitution and Section 10 of Article (I) of the Ohio Constitution:
>
> Inconsistencies in the evidence presented by the State weaken the credibility of its case…  The evidence presented by the defense was consistent and credibility (sic)...
>
> GROUND THREE: The prosecutor committed multiple acts of misconduct in violation of appellant's right to a fair trial under the 14th Amendment to the United States Constitution and Section 14 of Article (I) of the Ohio Constitution:
>
> The prosecutor referred to statements and evidence not part of the record in her closeing [sic] arguments which prejuiced the jury against the appellant ... (AND MUCH MORE)
>
> GROUND FOUR: Appellant was denied his effective assistance of counsel in

---

[1] Phillips first filed a petition for a writ of habeas corpus on June 10, 2011.  (ECF No. 13-1, Exh. 17, Case No. 3:11-cv-01205).  That petition was dismissed due to Phillips's failure to exhaust his claims with the Ohio Supreme Court.  (ECF No. 13-1, Exhs. 18 & 19.)  Thereafter, Phillips filed a motion for delayed appeal with the Ohio Supreme Court, which was denied on January 18, 2012.  (ECF No. 13-1, Exhs. 20-22.)

violation of the 6th Amendment to the United States Constitution and Sections 10 and 16 of Article (I) of the Ohio Constitution:

Trial counsel failed to object to statements made in closing by the State that included facts and evidence not presented at trail [sic] … (additionally, counsel failed to instruct the court to record all bench conferences to protect the record and preserve issues for appeal)

GROUND FIVE: Appellant was denied due process under Section 10 of Article (I) of the Ohio Constitution and the 5[th,] 6th and Fourteenth Amendments to the United States Constitution in the form of cumulative error:

If the errors previously argued do not individually constitute reversible error, as a whole their cumulative effect constituted reversible error…

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.  Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.  Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure

to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence

-11-

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

Respondent asserts that all five of Phillips's grounds for relief are procedurally defaulted, as he failed to raise them in a timely appeal before the Ohio Supreme Court. (ECF No. 13 at 17-18.) Although Phillips concedes that he did not timely appeal to the Ohio Supreme Court, he asserts that he was under the impression that his appellate counsel was going to appeal on his behalf. (ECF No. 16 at 4-5.) This Court declines to address the procedural default issue, and will instead proceed to address Phillips's claims, as they can easily be disposed of on their merits. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997). The Sixth Circuit has

-12-

also approved this rule where the procedural default question is complicated and unnecessary to

the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003);

*Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

## IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court. *See Parker v. Matthews*, 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11,

2012); *Renico v Lett*, 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529

U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an

explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and

standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."

*Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The

Supreme Court has indicated, however, that circuit precedent does not constitute "clearly

established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6;

*Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's

decision involves an unreasonable application of clearly established federal law "if the state

court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal

district court may not find a state court's decision unreasonable "simply because that court

concludes in its independent judgment that the relevant state court decision applied clearly

established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court

must determine whether the state court's decision constituted an objectively unreasonable

application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts

defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the

Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the

state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks

omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness

question as a test of its confidence in the result it would reach under *de novo* review," and that

"even a strong case for relief does not mean the state court's contrary conclusion was

-14-

unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems" and does

not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation

marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking

in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which

the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet,

that is because it is meant to be.")

**A. Grounds One and Two: Sufficiency and Manifest Weight of the Evidence Claims**

In grounds one and two, Phillips asserts that his rape conviction was: (1) not supported by

sufficient evidence; and, (2) against the manifest weight of the evidence. (ECF No. 1.) The

Court will address only sufficiency, as manifest weight claims are not cognizable on federal

habeas review.[3] *See, e.g.*, *Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v.*

*Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction

be supported by proof beyond a reasonable doubt with respect to every fact necessary to

---

[3] As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a
claim that a verdict was against the manifest weight of the evidence-as opposed to one
based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror'
and review the entire record, weigh the evidence, and consider the credibility of
witnesses to determine whether 'the jury clearly lost its way and created such a manifest
miscarriage of justice that the conviction must be reversed and a new trial ordered.'"
*Hess v. Eberlin,*2006 WL 2090093 at *7 (S.D. Ohio 2006), *quoting State v. Martin*, 20
Ohio App.3d 172,175, 485 N.E.2d 717 (Ohio Ct. App. 1983). Because a federal district
court does "not function as an additional state appellate court, vested with the authority
to conduct such an exhaustive review," this Court cannot consider whether Phillips's
conviction was against the manifest weight of the evidence. *Id.*

constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury – not the court– to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ----, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. ----, ----- , 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012). Under this standard, "we cannot rely simply

-16-

upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in *its* conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Phillips asserts there was insufficient evidence to support his rape conviction, because there was no physical or medical evidence that the victim's anal cavity was penetrated.  (ECF No. 1.) The state appellate court determined that Phillips's conviction for rape was supported by sufficient evidence:

> [*P50]  In his first assignment of error, appellant argues the state failed to prove an essential element of rape.  Specifically, appellant insists, there was insufficient evidence that the victim's anal cavity was penetrated.

> [*P51]  R.C. 2907.02(A)(1) provides, in material part:

> [*P52]  "(A) (1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:

> [*P53] "***

> [*P54]  "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person. * * *"

> [*P55]  A violation of R.C. 2907.02 is a felony of the first degree.  If it is specified and proved that the victim was under age ten, the court may sentence the offender to life imprisonment without parole.  R.C. 2907.02(B).

> [*P56]  "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and,

-17-

without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. * * *." R.C. 2907.01(A).

[*P57]  According to appellant, B.C.'s testimony with respect to penetration was ambiguous.  Appellant maintains B.C.'s testimony that she "felt something in my bottom" and that she "thought it was fingers" only shows there was contact with her buttocks.  Citing our recent decision in *State v. Holmes*, 6th Dist. No. L-08-1034, 2009 Ohio 6255, and *State v. Wells* (2001), 91 Ohio St.3d 32, 34, 2001 Ohio 3, 740 N.E.2d 1097, appellant insists failed attempts to penetrate a victim's anus is insufficient to prove anal rape.

[*P58]  *Holmes* and *Wells* are unavailing to this appellant.  Both cases stand for the proposition that, for the offense of anal rape to be sustained, there must be evidence of actual penetration, however slight.  *Holmes* at P 38; Wells at 34. B.C. testified that she felt what she believed was fingers "*in* my bottom."  The state clarified B.C.'s response, inquiring, "And you said you felt what you think was fingers in your -- bottom.  Do you mean your butt where you go to poop out of?"  The 11 year-old responded, "Yes."  This is sufficient evidence by which the jury could have found the element of anal penetration established.  Accordingly, appellant's first assignment of error is not well-taken.

*Phillips*, 2010-Ohio-2577 at ¶¶50-58.

Upon careful review of the trial transcript, the Court finds that the state appellate court accurately summarized the evidence regarding anal penetration.  (ECF No. 13-2, Tr. 206-07.)  Furthermore, finding the evidence sufficient was not unreasonable.  Under Ohio law, a conviction for rape does not require the presence of physical evidence.  *See, e.g., State v. Johnson*, 858 N.E.2d 1144, 112 Ohio St. 3d 210, 217, 2006-Ohio-6404 (Ohio 2006) (rejecting a sufficiency of the evidence claim based on a lack of physical evidence of rape); *accord State v. Ward*, 2010-Ohio-6462 at ¶62, 2010 Ohio App. LEXIS 5363 (Ohio Ct. App., Dec. 28, 2010); *see also State v. Love*, 550 N.E.2d 951, 49 Ohio App. 3d 88, 91 (Ohio Ct. App. 1988) ("no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction.")  Phillips, in his traverse, argues that the victim's testimony was not credible and,

-18-

therefore, reasonable doubt exists.  (ECF No. 16.)  However, it is not this Court's function to re-weigh the evidence or to decide how much weight the jury should have ascribed to the victim's testimony.  As such, Phillips's first ground for relief is without merit.

Phillips also attempts to raise a new argument in his traverse not raised in his original petition.  (ECF No. 16 at 28-34.)  He maintains that his life sentence was contrary to law in that there was no showing of force or threat of force.  *Id*.  First, a conviction under O.R.C. § 2907.02(A)(1)(b) requires only that an offender engaged in sexual conduct with a person less than thirteen years old.  Unlike O.R.C. § 2907.02(A)(1)(a), § 2907.02(A)(1)(c) or § 2907.02(A)(2), Phillips's conviction did not require proof an additional element such as force or threat of force; impairment of the victim by drugs, intoxicants, or other controlled substances; or, mental or physical impairment of the victim.  Phillips appears to concede as much in his traverse. (ECF No. 16 at 29.)

Phillips, nonetheless, maintains that evidence of force or threat of force was required to impose a life-sentence.  *Id*.  Pursuant to the plain language of O.R.C. § 2907.02(B) (2008), "[e]xcept as otherwise provided in this division, notwithstanding sections 2929.11 to 2929.14 of the Revised Code, an offender under division (A)(1)(b) of this section *shall be sentenced to a prison term or term of life imprisonment* pursuant to section 2971.03[4] of the Revised Code." (Emphasis added).  As explained by the United States District Court for the Southern District of Ohio, "[u]nder 2907.02(B), the penalty from the finding of guilt may be raised to a mandatory

---

[4]  "[I]f the offense is rape committed in violation of division (A)(1)(b) of section 2907.02 of the Revised Code ... when the victim was less than ten years of age ... it shall impose upon the offender a term of life imprisonment without parole."  O.R.C. § 2971.03(A)(2) (2008).

life sentence *either* if the offender used force or threats of force, or if the victim was under ten years of age." *Baer v. Clipper*, 2013 U.S. Dist. LEXIS 11205 at **14-15 (S.D. Ohio, Jan. 28, 2013). Here, the victim was nine years old at the time of the offense. The *Baer* court further explained that because the petitioner's offense had "already been elevated to the life sentence level due to the age of the victims," there was no error resulting from: (1) the indictment not specifying the element of force; (2) the State not proving force; or, (3) the court not receiving a jury finding of force. *Id*. As such, Phillips's argument is without merit.[5]

**B.    Ground Three: Prosecutorial Misconduct**

Phillips alleges that the prosecution committed multiple acts of misconduct resulting in the

---

[5] Even assuming *arguendo* that force was a requirement, testimony that the victim was asleep at the time of the offense, and that Phillips moved her from the recliner to the couch, would be sufficient to show force:

> [Ohio] [a]ppellate courts have found sufficient evidence of force even if the victim was asleep when the offense was committed. For instance, in *State v. Sullivan* (Oct. 7, 1993), 8th Dist. No. 63818, 1993 Ohio App. LEXIS 4859, the sleeping victim awoke to find the defendant performing oral sex on her. In finding the requisite element of force present, the Eighth District noted that "any" compulsion could establish force as defined in the statute, and observed that the evidence demonstrated that in committing the offense, the defendant had removed the victim's clothing and repositioned her body. Similarly, in *State v. Lillard* (May 23, 1996), 8th App.No. 69242, 1996 Ohio App. LEXIS 2150, that court found the element of force present where the defendant "used physical exertion to position [the victim's] robe and legs." And in *State v. Byrd*, 8th Dist. No. 82145, 2003 Ohio 3958, P24, that same court affirmed a conviction for gross sexual imposition under R.C. 2907.05(A)(1) when the defendant waited until the girl had fallen asleep, sat next to her on the couch, placed her legs on his lap, and displaced her clothing.

*State v. Bajaj*, 2005 Ohio App. LEXIS 2735, 2005-Ohio-2931 (Ohio Ct. App., Jun. 8, 2005). As Ohio law appears to holds that the element of force or compulsion is satisfied where the victim is asleep, Phillips's sufficiency argument is meritless.

violation of his right to a fair trial. (ECF No. 1.)

To reach a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal. *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994). First, a court must determine whether a prosecutor's statements were improper followed by a second determination as to whether the impropriety constitutes reversible error. *DeJohn*, 368 F.3d at 548. The following four factors are used to determine whether reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.*, *quoting Carroll*, 26 F.3d at 1385. Further, prosecutorial misconduct claims are subject to harmless error analysis. *See Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2006). ("An error is found to be harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). The state appellate court addressed the prosecutorial misconduct claim as follows:

> [*P60] In his third assignment of error, appellant insists the state was guilty of prosecutorial misconduct when, during closing argument, the prosecutor repeatedly argued facts not in evidence. Appellant enumerates three such incidents.

> [*P61] Appellant complains that during closing argument the prosecutor said, "The girls were in the bedroom, and [B.C.] told you they have a bedtime. They were already in the bedroom. She wasn't tired. She decided to stay up, watch this movie." Nowhere in the record, appellant complains, is there testimony such as this.

-21-

[*P62]  Next appellant quotes the prosecutor as saying, "and [B.C.] testified her sister and [her friend] were sleeping on the couch, and she sat down on the recliner and fell asleep. And the state would submit to you that that is credible."  There was never any testimony, appellant insists, as to where B.C.'s sister and friend were when B.C. went to sleep on the recliner.

[*P63]  Finally, appellant complains, the prosecutor's recitation that, "She feels him slip his hands, his fingers underneath her shorts * * * and stick his finger in her anus," was not in the record. B.C. actually testified that she "thought it was fingers" and made no mention of appellant's hands, according to appellant.

[*P64]  "[P]rosecutors are entitled to considerable latitude in opening statement and closing arguments.  In closing argument, a prosecutor may comment freely on 'what the evidence has shown and what reasonable inferences may be drawn therefrom.'  [A]ny alleged misconduct in the closing argument must be viewed within the context of the entire trial to determine if any prejudice has occurred.  To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: '(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.'"  *State v. Gravelle*, 6th Dist. No. H-07-010, 2009 Ohio 1533, P 70. (Citations omitted.)

[*P65]  At trial, appellant objected to none of the statements he now insists constitute prosecutorial misconduct.  Absent such objection, misconduct is waived unless there is plain error. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916.  Under any standard, we do not find prosecutorial misconduct in the statements of which appellant complains.


[*P66]  It is a fair inference that appellant's fingers are connected to his hand. It would certainly be notable if they were not.  It is likewise a fair inference from B.C.'s testimony that she stayed in the living room because she was not tired and wanted to watch the movie.  We agree the sleeping arrangements of B.C.'s sister and friend prior to B.C.'s parent's departure is not in the record, but fail to find any prejudice in this remark.  Consequently, appellant has failed to demonstrate prosecutorial misconduct in the state's closing argument.  Accordingly, appellant's third assignment of error is not well-taken.

*Phillips*, 2010-Ohio-2577 at ¶¶60-66.

Before determining prejudice, a court must first address whether a prosecutor's statements

were improper.  Although a prosecutor is allowed "to argue reasonable inferences from the

evidence," *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), he or she is not permitted to misstate the evidence. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (*citing United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001).  It is thus "improper for a prosecutor, during closing arguments, to bring to the attention of the jury any purported facts that are not in evidence and are prejudicial." *Id*. (*citing Byrd*, 209 F.3d at 535).  Phillips's argument – that the prosecutor made improper statements about his hand when the victim only mentioned fingers – is without merit.  Simply put, there are no misstated facts.  The state appellate court succinctly points out the obvious: it is reasonable to infer that Phillips's fingers are attached to his hand.  Because there was testimony from the victim that Phillips penetrated her anus with his fingers, the prosecutor's statement cannot be construed as anything but a reasonable factual inference.  The prosecutor also stated that the victim was not tired.  While the victim may have not expressly said as much, the Court finds nothing unreasonable in the state appellate court's determination that this was a reasonable inference given the victim's testimony that the other children were in the bedrooms getting ready for bed while she was not.  (Tr. 204-05.)  Finally, the Court fails to see how the location of where the victim's sister and friend fell asleep is of anything more than marginal importance.[6]  While the state appellate court concedes that this information is not in the record, it certainly cannot be deemed to have had a prejudicial effect.  None of the aforementioned statements rise to the level of misconduct.  Nonetheless, even if the comments were improper, there was no substantial or injurious effect on the outcome of the case, and any misconduct, therefore, was harmless.

---

[6]  There is testimony that the other children fell asleep around 11:30 p.m.  (Tr. 203.)

-23-

### C.   Ground Four: Ineffective Assistance of Counsel

Phillips argues that he was deprived of the effective assistance of trial counsel in violation of the 6th Amendment.  (ECF No. 1.)

First, to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id.*  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained recently by the United States Supreme Court:

-24-

> Establishing that a state court's application of *Strickland* was unreasonable under
> § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," *id.*, at 689, 104 S. Ct. 2052, 80 L. Ed. 2d
> 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481
> (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556
> U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial. 556 U.S., at
> ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter,* 131 S. Ct. 770, 788 (U.S. 2011); *accord Kennedy v. Warren*, 2011 WL

1642194, *2 (6th Cir. May 3, 2011); *accord Goza v. Welch*, 2012 U.S. Dist. LEXIS 178665 at

**24-25 (N.D. Ohio Dec. 18, 2012).

Specifically, Phillips argues that he received ineffective assistance because: (1) counsel

should have objected to statements made during closing arguments by the prosecution; and, (2)

counsel should have instructed the court to record all bench conferences to protect the record and

preserve issues for appeal.[7] (ECF No. 1.)

The state appellate court found that because the prosecution's statements were all either fair

inferences of the evidence of record or non-prejudicial, counsel's failure to object was not

deficient. *Phillips*, 2010-Ohio-2577 at ¶69. There is nothing unreasonable in the appellate

---

[7] Phillips raises a litany of new alleged errors in his traverse that were not raised in his
petition and were not raised on direct appeal. (ECF No. 16-1 at 91.) The Court will
confine its attention to only those two issued raised in the petition and on direct appeal,
as in Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings that
could have been raised on direct appeal. Thus, any ineffective assistance of trial counsel
claims not raised on direct appeal are procedurally defaulted. Moreover, Phillips's
"cause" for not completing a full round of review, appellate counsel's alleged failure to
file a requested appeal to the Ohio Supreme Court, would not excuse the failure to raise
an issue before the state appellate court.

court's determination.  Trial counsel cannot be found deficient for failing to raise meritless

objections.  As to the statement of the prosecution regarding sleeping arrangements, the appellate

court conceded that this was not based on the evidence of record.  However, the court found no

prejudice.  Under such circumstances, it cannot be reasonably found that raising such an

objection would have resulted in a different outcome.

The state appellate court did not address Phillips's second allegation, namely that trial

counsel was ineffective for failing to instruct the trial court to record all bench conferences.

While this argument was raised on direct appeal, Phillips cited no law on this issue.  He merely

pointed to a sidebar conference occurring at page 209 of the record.  (ECF No. 13-1, Exh. 7 at

17.)  Phillips's petition also fails to cite any law suggesting that defense counsel is ineffective

when he or she fails to instruct the trial court to record bench conferences.  (ECF No. 16.)  In a

habeas case before the United States District Court for Southern District of Ohio, a petitioner's

argument – that there was an inadequate record due to a recording system that failed to record

any of the numerous sidebar conferences –  was found meritless.  *Musselman v. Warden*, 2010

WL 1389610 at *8 (S.D. Ohio, Mar. 30, 2010).  In arriving at its decision, the *Musselman* court

noted that: (1) "[t]here is no federal constitutional right to appeal criminal verdicts for error

review;" and, (2) "there is no federal constitutional right to an error-free record on appeal."  *Id.*

(*citing McKane v. Durston*, 153 U.S. 684 (1894); *Lopez v. Wilson*, 426 F.3d 339, 355 (6th Cir.

2005)); *see also Taylor v. Bradshaw*, 2006 WL 5430534 at *21 (S.D. Ohio, Jul. 14, 2006)

(finding that petitioner's complaint of unrecorded sidebar conferences was meritless because,

"while Ohio R. Crim P. 22 requires recording all proceedings in a capital case, there is no federal

constitutional right to that effect established by holding of the United States Supreme Court");

*Shouse v. Jones*, 2007 WL 551585 at *5 (W.D. Okla., Jan. 25, 2007) (denying habeas petition because the Supreme Court has never recognized a federal constitutional right to a recording of bench conferences) (*citing Madera v. Risley*, 885 F.2d 646, 648 (9th Cir. 1989) ("There is no Supreme Court ... authority on the due process implications of a state court's failure to record portions of a criminal trial.")).

Therefore, Phillips's fourth ground for relief should be denied.

**D.   Ground Five Cumulative Error**

In his fifth ground for relief, Phillips asserts that he was denied due process due to the alleged cumulative errors raised in his first four grounds for relief. (ECF No. 1.)  Phillips did not expand on this argument in his Traverse.  (ECF No. 16.)  Nonetheless, "the law of this Circuit is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue." *Cross v. Stovall*, 238 Fed. Appx. 32, 41 (6th Cir. 2007), *cert. denied* 552 U.S. 981, 128 S. Ct. 454, 169 L. Ed. 2d 317 (2007) (*quoting Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)); *accord Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) ("[B]ecause [petitioner's] individual assignments of error would not support habeas relief, ... the cumulative effect thereof is likewise insufficient."); *Morris v. Bell*, 2011 U.S. Dist. LEXIS 155039 at *196 (W.D. Tenn. Sept. 29, 2011).  Therefore, as none of the claims previously discussed warrant habeas relief on their own, they are not cognizable under a cumulative error review and provide no basis for relief.[8]

---

[8]  While the Court recognizes that the cumulative errors of counsel could result in a valid claim of ineffective assistance of counsel, it has already been determined that none of the exhausted claims resulted in error.  *See, e.g., Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) ("[Petitioner's] cumulative-error claim therefore fails because there are simply no errors to cumulate.") Furthermore, the ineffective assistance of counsel claims that are

## V.  Conclusion

For the foregoing reasons, it is recommended that Phillips's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: November 12, 2013



## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

first raised in Phillips's traverse are procedurally defaulted. Phillips never filed an Ohio App. R. 26(B) application alleging that appellate counsel was ineffective for failing to argue other alleged errors of trial counsel.

-28-